UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

Jesse J. Kessler and  Case No. 10-59898-wsd
Denise M. Kessler,  Chapter 13
  Hon. Walter Shapero

    Debtors.
_____/

Jesse J. Kessler and Denise M. Kessler,

    Plaintiffs,

v.  Adv. Pro. No. 10-5933

Bank of America, N.A.,

    Defendant.
_____/

## OPINION REGARDING VALUE OF REAL PROPERTY

    This matter is before the Court upon Debtors' Complaint to Determine Validity, Priority or Extent of Lien on Real Property.

### Facts

    Debtors filed their voluntary chapter 13 petition on June 18, 2010. As part of their chapter 13 plan, Debtors proposed to retain their residence located at 29424 Howard, Madison Heights, Michigan (the "Residence"). For purposes of this matter, the parties stipulated that the Residence is encumbered by a first mortgage in the amount of $68,564.18. Bank of America, N.A. ("Defendant") is the holder of a second mortgage in the amount of $44,932.92. Debtors initiated this adversary proceeding seeking to treat the second mortgage as an unsecured debt under the plan, i.e., to "strip it" from the Residence. In order to do so, the value of the property must be found to be no more than the first mortgage balance.

1

The trial, which was held on January 18, 2011, was therefore focused on the value of the Residence. Debtor's witnesses were Jesse Kessler, one of the debtors, and an appraiser. Defendant's witness was an appraiser. Mr. Kessler testified as to the age of the Residence (53 plus years) and the condition of the property. As to the latter, he testified that the Residence was in need of the following repairs or replacements:

> (1) The roof needed repair or replacement due to a sagging condition, which would cost approximately $4,000 to $5,000 (the sagging condition has existed for some time, but that late last fall, and soon after the case was filed, it also started leaking);
>
> (2) The air conditioner compressor needed replacing, which would cost approximately $1,130;
>
> (3) The driveway area immediately in front of the garage needed repaving, which would cost approximately $2,500 to $3,000;
>
> (4) Three cracked cement window sills needed replacing, which would cost approximately $900; and
>
> (5) The sewer line between the home and the street needed replacing, which would cost approximately $3,500.

His conclusion, as the owner, was that, in its present condition and before any of the indicated repairs were made, the value of the Residence was some $55,000. Debtors' appraiser testified to a value of $65,000, and it would appear that he took into account Mr. Kessler's specification of the listed repair or replacement items. Defendant's well-credentialed appraiser testified to a value of $79,000.

## Discussion

The Court has concluded that the value is less than the balance of the first mortgage, and can therefore be stripped, for the following reasons:

> (a) Defendant's appraiser either did not observe the property conditions above referred to by the Debtor, or, if he did, did not conclude that such materially adversely affected the value. The Court is satisfied that those conditions do exist, and if known, would adversely affect the value of the property, though not necessarily on a dollar-for-dollar cost of repair or amelioration basis.

2

(b) Defendant's appraiser, in utilizing comparable sales as part of his analysis, avoided using sales of HUD owned properties. HUD owned properties are typically sold at depressed prices, putting such sales in what has been termed a category of "distressed" sales. Such sales are those driven by the need or practice of disposing of such properties (which are often in very poor condition) quickly, as opposed to exposing them to the market for a substantial period of time, particularly under the current, well known oversupply market conditions. In a recent case, *Siler v. Citibank, N.A.*, where one appraiser's comparables exclusively involved "distressed" sales, this Court opined on the matter, saying the following:

> A distressed sale value, i.e., what the property would be worth in a so-called short sale or as a mortgagee owned foreclosed property being marketed by the mortgagee, is practically indistinguishable from the foreclosure-value standard rejected by the Supreme Court in *Rash*. A home in good condition is itself obviously worth more than one that is not. That said, however, its value, despite its condition, might very well be influenced by the neighborhood in which it is located. If the neighborhood, for instance, contains a material number of vacant and/or foreclosed homes that may be on the market or might soon be put on the market, the value of the home in good condition will be adversely affected simply by reason of its location and those surrounding conditions. When that situations occurs, to what extent such occurs, and how such is quantified are theoretical and practical problems, particularly in the current residential real estate market situation in southeastern Michigan. What this means in terms of what is before the Court in this and similar cases is that an appropriate valuation can neither ignore actual distressed sales, nor exclusively focus on them. And, limiting the parameters of the valuation analysis to only non-distressed sales (as is true of Fortuna's opinion), is equally inappropriate. In less difficult times, the differences between sales and properties can largely and more objectively be explained and accounted for by differences in size, construction, and the other tangible differences one can see, measure, and evaluate with some certainty. And, as a result, the differences between high and low are much less than what we see in these times where the intangible and more difficult to quantify effect on the entire market place stems in no small measure from the existence of large numbers of vacant and foreclosed properties, and resulting distressed sales wherever one turns. That has a tendency to produce large differences. Like it or not, these are factors that influence value, but do not set value, except possibly in a situation where the home is literally a very small island in a large sea of vacant and/or vandalized properties. The smaller the sea is in relation to the size of the island, the higher the value of the island and vice versa. The appropriate analysis, extending the metaphor, is therefore one that takes into account

the size of the island as well as the area of the sea, and of course the other traditional valuation factors, analyses, and comparisons.

*Siler v. Citibank, N.A.*, Adv. Pro. No. 09-6926, Docket No. 21, p. 3-4 (Bankr. E.D. Mich. Nov. 17, 2010).

(c) Defendant's appraiser emphasized in his testimony that a property located in what is perceived as a "good" school district is worth somewhat more than an otherwise comparable property not located in such a district. That is likely the case. The evidence in this case indicated that homes on the same street as the subject Residence are in the Lamphear School District, apparently a "good" school district. While there is no direct evidence on the point, one can draw an inference that the subject Residence is also in that district and, therefore, no distinction between the values on that account are relevant. Even if one were to be made, the extent to which one factors that into value, or the dollar value attributable to such is not derivable from the admitted evidence.

Defendant's appraiser, as noted, is well credentialed and likely a more experienced appraiser overall. Debtors' appraiser is both an active real estate agent and an appraiser. One can argue that such dual activities either add to, or detract from, one's credibility or credentials as an appraiser. In this particular case, the Court believes that Debtors' appraiser has sufficient experience as an appraiser, which when coupled with his practical knowledge of the market place gained by his other experience, at least precludes discounting his opinion as to value. In this particular case, however, primarily it is the foregoing indicated comments with reference to Defendant's appraisal that tip the balance toward a conclusion that Debtors' appraisal and valuation evidence in this particular case is somewhat more credible and weighty, and thus requires the indicated conclusion.

Debtor shall prepare and present an appropriate order.

.

**Signed on February 01, 2011**

                                                              **/s/ Walter Shapero**

                                              **Walter Shapero**

United States Bankruptcy Judge